Tukley, J.
delivered the opinion of the court.
Miles J. Turbeville, one of the defendants, was appointed administrator of the estate of his deceased father, by the county court of Robertson county, in February, 1836, and entered into bond with, George Childress, James Darden and Jesse Davis, as his securities for his faithful performance of the trust. These securities having become apprehensive of loss, Turbeville at their request, at the July term of the county court of Robertson county, executed a new bond, with M. Powell, Thos. B. Matthews, David Darden and R. Bartlett, as his securities, and the first bond was cancelled, and an order made by the court discharging the securities from any liability thereon. In November afterwards, David Darden, one of the new securities, became dissatisfied, and Turbeville with a view to his release, got the bond from the clerk of the county court, erased his name from it, and procured one Miles Kirby to sign it in his stead. Upon this state of facts several questions are made. 1st. It is contended by the distributees of the estate, that the first set of securities were not released, because there was no petition filed against the administrator by them according to the provisions of the act of 1813, ch. 119, and that, in as much as it was a proceeding exp arte, the requirements of the statute ought to have been strictly complied with. To this, we answer, that the *246 statute requir-es the petition and service of notice, for the benefit of the administrator and not of the distributees. The power of granting letters of administration is delegated to the county court, and it is always to be presumed, that^they will not neglect a correct performance of their duty, by failing to require good and ample security from the administrator. The distributees have nothing to do with it, are no parties to the proceeding, and the county court have as much power under the act of 1813, to change the securities without their knowledge or consent as it had to take them. Then the statute only requiring a petition for the purpose of giving notice to the administrator, if he choose to come in without notice, as he did in this case, no one has a right to except thereto.
2. It is contended, that the second set of securities are not responsible, because the bond which they executed, having been altered by the erasure of the name of David Darden, is void, and no relief can be had upon it either in law or equity. 'We do not consider it necessary to enter into an investigation of the common law learning uppm .this subject; to its refinements we are principally indebte'd'for the' existence of the chancery courts, and its stubborn adherence to forms has been constantly aiding and increasing the jurisdiction of its-sister tribunal. The'fact, that this bond could not have been sued upon at common law, is the very thing upon whichthé'jurisdiction of a court of chancery on this subject rests. •It is not denied, that a court of chancery can give relief in all cases, where the bond has been lost, or where it has been defaced by fraud or accident; but it is said, the bond is not lost, it has not been defaced by fraud, for the person who did it, believed he had the power; that it has not been defaced by accident but by design, and therefore it-does not fall within the principle which gives a court of chancery jurisdiction. This argument is too refined. The principle, as we understand it, is, that a court of chancery will give relief in all cases, where the bond has not been satisfied and the obligee is prevented from sueing at common law by reason of its being lost or defaced, no matter from what cause, provided it be not by his own misconduct; that the words fraud and accident cover all erasures or alterations except those made by the obligee himself, or with his knowledge and consent. Then the alteration of this bond having been made, by persons having no authority to do *247 so, in a court of chancery it stands as if it had never been done, and David Darden is still a party to it, bound by its obligations.
3d. It is contended, that the second set of securities are only responsible for assets which came to the administratior and were wasted, after the date of the second bond; that the first securities were responsible for all that came to his hands and were wasted before, and that the county court has no power to discharge them. This, we are of opinion, is too restricted a construction of the powers granted to the county court by the statute of 1813. We think that it was intended, that the court should have power to discharge one set of securities from previous as well as subsequent liability, by substituting others in their stead, who shall be bound as if they had been the first. No harm can be done by this, the security is taken for the benefit of the creditors and distributees, and if the court does its duty, they can be as well protected by the second securities as the first. The court is as competent to take good security in the second instance as in the first, and the presumption is, that it will do so. The second securities have no right to complain, they signed the bond with the knowledge that the first were seeking their discharge, and agreed ^lBff^nSiTOtea^i their stead. The supreme court of our sist^F Sjpjjjfef Kenmo^bfiphave given the same construction to a similal^statute^in fire cases of Welborne vs. Commonwealth, 5 J. J. Marihah, 608, and 1 Dana, 514: 1 Morehead and Brown’s Digest, 684, 770.
We are, therefore, of opinion, that the file securities are discharged from all liability, and that the second are bound for the devastavit of the administrator, to whatever extent it be, if it do not exceed the penalty in the bond. The decree of the chancellor will therefore be affirmed.